IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PLAINTIFF

VIOLA E. MARSHALL

vs.                          CASE NO.  **4:06CV00949JMM**

MICHAEL J. ASTRUE,                                       DEFENDANT
Commissioner, Social Security Administration[1]


## <u>ORDER</u>


Plaintiff, Viola Marshall, brings this action under 42 U.S.C. § §405(g) for judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act).  Both parties have submitted briefs, and the case is ready for disposition.

## PROCEDURAL BACKGROUND

Marshall applied for DIB on March 22, 2002, alleging that she became disabled on August 15, 2001, due to posttraumatic stress disorder (PTSD) and knee pain. (Tr. 18).[2] After her applications were denied initially and upon reconsideration, Marshall requested a hearing before the Administrative Law Judge (ALJ) which was held on January 4. 2005. (Tr. 622-666). Marshall,  who was represented by counsel, and Arthur Lewy, Ph.D., an

---

[1]Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12, 2007.  He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

[2]Marshall initially applied for DIB in September, 2000, alleging that she had been disabled since May 10, 2000.  (Tr. 17, 72).  This application was denied initially in October, 2000.  (Tr. 17).  Marshall did not seek further administrative review of her September, 2000 application.  Also, she does not, in this appeal, pursue her claim  for disability based on knee pain.

impartial medical expert (ME) testified.

On March 12, 2005, the ALJ issued a decision finding that Marshall was not disabled. (Tr. 14-27). Marshall appealed her case to the Appeals Council. (Tr. 12). On June 7, 2006, the Appeals Council denied Marshall's request for review. (Tr. 6-8). Therefore, the ALJ's decision became the final decision of the Commissioner from which Marshall seeks judicial review.

## STANDARD OF REVIEW

Marshall has the burden of proving her disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.

*Roberts v. Apfel,* 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

In this case, the Court must determine whether the Commissioner's decision that Marshall is not disabled as of August 15, 2001, is supported by substantial evidence.

## FACTUAL BACKGROUND

Marshall was born on May 11, 1956 and was 48 years old at the time of the hearing.

(Tr. 69, 626).  She has fourteen years of education and past work experience as a letter sorter, administrative assistant, home care assistant,  retail sales person, and clerk.  (Tr. 18).   She has not engaged in substantial gainful activity since the alleged onset date.

Marshall was subjected to sexual and racial harassment while serving in the United States Army from 1974-1977. (Tr. 266, 524).  She was  first diagnosed with PTSD, resulting from this harassment,  in May, 2000.

The record contains evidence that Marshall abused alcohol and was dependent on it.  It also includes evidence that Marshall used cocaine and marijuana.  Marshall was admitted to the Veterans Administration (VA) Hospital on May 22, 2000, for inpatient addiction treatment.  She remained in the hospital until June 1 , 2000.   She was discharged with a diagnosis of alcohol dependent, cocaine abuse, and PTSD. (Tr. 164).

After her discharge and  over the next few years, Marshall participated in a number of group therapy programs and individual counseling sessions, although, as the ALJ notes, there is a large gap in Marshall's medical history from August, 2002 to May, 2004.

Both individual and group therapy sessions focused on Marshall's alcohol dependence, and problems associated with her PTSD including anger, nightmares, anxiety, and conflicts with her son. (see e.g., Tr. 289-340, Tr. 587-609).  She was advised on a number of occasions to quit drinking and made some attempts to do so.  However, she ultimately has been unable and unwilling and views alcohol as an alternative to medications.

There is almost no mention in the voluminous progress reports and case notes from her therapy sessions that Marshall was having problems at work.   In March, 2001,  she stated that she was worried that she might have problems keeping her temper under

control at work, but such a problem never developed.  She opined that her co-workers would describe her work and personality favorably. (Tr. 303).  Only after the September 11, 2001, terrorist attack did she express trouble working.  At that time, she complained of increased nightmares and difficulty in managing her emotions, which she characterized as "out of control" because of the events of September 11th.  Marshall decided to quit both her jobs, stating that she couldn't get out of bed.  "I can't do this anymore.  I'm tired of putting on a mask." (Tr. 282).

Marshall received VA disability benefits at the end of September, 2001, and she did not engage in substantial gainful employment after that.  She did, however, do some volunteer work with hospice. (Tr. 575, 642).

At the hearing, Marshall testified that she drinks about 16 ounces of vodka daily (Tr. 636, 638).  She does not drink during the day, and uses alcohol to control her anger. (Tr. 637).   She refuses to take medications for her moods, relying on alcohol instead as her medication, and she refuses to be treated for her alcoholism. (Tr. 637).

She stated that during the day, when she doesn't drink, she is able to do her errands and go on outings.  "I guess during the day, I'm just a regular person." (Tr. 660-61).  However, she testified that she has about 10 to 12 days a month when she will not leave the house. (Tr. 661).

Dr. Lewy, the ME, testified that Marshall's primary impairments are alcohol dependence, which is not in remission, and PTSD. (Tr. 643).  Dr. Lewy characterized Marshall's alcohol use at abusive levels. (Tr. 645)..  Dr. Lewy stated that even if Marshall stopped drinking, she would still have a severe underlying problem of PTSD. (Tr. 644).  Dr. Lewy further testified that Marshall's alcoholism affects her cognitive functioning, her

information processing, her ability to control her emotions and would increase her irritability. (Tr. 645).

Under the B criteria, assuming the use of alcohol and PTSD, Dr. Lewy considered Marshall to have moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistent and pace, and no episodes of decompensation of extended duration. (Tr. 26, 645-46).

Absent alcohol use, Dr. Lewy found that Marshall's impairments resulted in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation of extended duration. (Tr. 26, 646)

## ALJ'S DECISION

The ALJ undertook the familiar five-step analysis in determining whether Marshall was disabled. The five-step sequential evaluation determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because  the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C. F. R. §§ 416.920 and 404.1520. *See Cox v. Barnhart*, 345 F. 3d 606 , 608 n. 1 (8th Cir. 2003).

The ALJ found that Marshall had not engaged in substantial gainful activity since the onset date. (Tr.19). She found that Marshall had PTSD, and alcohol dependence, which are "severe" impairments within the meaning of the Act. (Tr. 20).   The ALJ found that

Marshall's combination of impairments met the requirements of section 12.09 of the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. 26). According to the ALJ, Marshall's impairments resulted in moderate restrictions of activities of daily living, marked difficulties in maintaining concentration, persistence and pace, but no episodes of decompensation of extended duration. (Tr. 26).

Legislation in 1996 precludes a claimant from obtaining disability benefits if either alcoholism or drug addition is a "contributing factor material to the Commissioner's determination that the individual is disabled. " 42 U.S.C. § 423(d)(2)(c); *Petit v. Apfel*, 218 F. 3d 901, 902 (8th Cir. 2000). In determining "whether the substance abuse is 'material,' the claimant has the burden of demonstrating that she would still be disabled if she were to stop using drugs or alcohol.*" Vester v. Barnhart*, 416 F.3d 886, 888 (8th 2005).

The ALJ found that absent alcohol and drug use, Marshall's impairments do not meet or are not medically equal to one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ found that "[i]f clean and sober, [Marshall's] impairments result in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and she has had no episodes of decompensation of extended duration." (Tr. 26).

The ALJ found Marshall's allegations regarding her limitations not to be totally credible. (Tr. 26). Presuming Marshall is clean and sober, the ALJ found that Marshall has the residual functional capacity (RFC) to perform work at all exertional levels with occasional public contact and which does not require extensive concentration. Based on this RFC, the ALJ found at step 4 that Marshall is capable of performing her past relevant work as a letter sorter at the United States Postal Service, as an administrative assistant

and as a clerk.  (Tr. 27)..   Therefore, the ALJ found that Marshall is not disabled.  (Tr. 27)

**DISCUSSION**

Marshall argues that the Commissioner's finding is not supported by substantial evidence.  She first argues that the ALJ erred in finding that she had past relevant work as a letter sorter or clerk.   "Past relevant work" is defined, *inter alia*, as work which was performed within the past fifteen years. 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a). Marshall worked for the United States Postal Service as a letter sorter from September 1981 until September, 1985. (Tr. 88).  She described her job duties as keying in zip codes on a sorting machine.  (Tr. 93).  Marshall worked as a clerk at the VA Medical Center from September, 1986 until October, 1988 where she was required to type, fax, and file.  She made appointments and  typed letters to clients.  (Tr. 88, 92).

While both jobs were performed more than 15 years prior to the ALJ's decision, the ALJ may consider work performed prior to the 15-year period "'as relevant when a continuity of skills, knowledge, and processes can be established between such work and the [claimant's] more recent occupations.'" *Pickner v. Sullivan,* 985 F.2d 401, 403 (8th Cir. 1993)(quoting SSR 82-62, at 401 (effective Aug. 20, 1980)).   Marshall's more recent job as an administrative assistant required that she type, fax, and make airplane and hotel reservations.  (Tr. 91).  The ALJ properly considered the earlier work as past relevant work because there was a continuity in the job skills between the earlier work and Marshall's more recent work as an administrative assistant.

Second, Marshall complains that the ALJ erred in concluding that Marshall could perform her past relevant work as it is generally performed in the national economy.   She contends that the ALJ did not cite any evidence to support this finding.

At step 4, the ALJ makes a determination as to whether a claimant retains the RFC to perform the actual functional demands and job duties of the her past relevant work or the functional demands and job duties of the occupations as it is generally performed in the national economy.  *Evans v. Shalala*, 21 F. 3d 832, 833 (8th Cir. 1994).  Here, the ALJ found that Marshall could perform her past relevant work as she had performed it and as it is generally performed in the national economy.  (Tr. 26).

There was evidence in the record to support the ALJ's finding that Marshall could perform her past relevant work as it is generally performed in the national economy.  As the ALJ stated, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and non-exertional demands of such work."  (Tr. 25, citing SSR 82-62). The ALJ discussed the job duties as described by Marshall.  (Tr. 25-26).

Even assuming that the ALJ failed to adequately determine that Marshall could perform her past relevant work as it is generally performed in the national economy, the evidence supports the ALJ's determination that Marshall could return to her past relevant work as it was actually performed.  Therefore, any error is harmless.

Third, Marshall argues that the finding at Step 2 that Marshall had a "severe" mental impairment precluded the ALJ's finding that Marshall could perform her semi-skilled past relevant work. Marshall's assertion is without merit.  At Step 2, the ALJ is to make a determination as to whether the impairment is severe.  If, as Marshall contends, a finding of severity would preclude as a matter of law  a finding that a claimant could return to his or her past relevant work, the remaining steps of the sequential process mandated by the Act would be rendered nugatory.   Step 4 requires the ALJ to make a determination as to

-8-

whether a claimant can sufficient RFC, **despite the impairment**, to perform her past relevant work 20 C.F.R. § 404.1520.

There is no conflict between the two findings. Marshall suffers from PTSD, a severe mental impairment. However, as discussed *infra*, the evidence overwhelming supports the ALJ's conclusion that Marshall can return to her past relevant work.

Fourth, Marshall asserts that Dr. Lewy's testimony did not constitute substantial evidence. The ALJ stated that Dr. Lewy testified that absent alcohol abuse, Marshall "is capable of work which does not require extensive concentration and extensive social contact. Dr. Lewy is well qualified to render an opinion as to the mental aspects of [Marshall's] condition. His opinion is strongly supported by the evidence from treating sources at the VA. His impartial testimony was well reasoned and persuasive." (Tr. 24)

Marshall states that Dr. Lewy did not so testify, but made only vague, general statements about her ability to work. The record supports the ALJ's summary of Dr. Lewy's testimony. He opined that Marshall would not be precluded from all work, and that she is moderately limited in social functioning and concentration. (Tr. 646-47). Furthermore, Dr. Lewy's opinion was supported by the extensive record in this case.

In the alternative, Marshall contends that the transcript of Dr. Lewy's testimony is defective. There are a number of places where his testimony is designated as "INAUDIBLE." "Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, [the] Court will not remand a case based upon inaudible portions of the record." *Williams v. Barnhart*, 289 F. 3d 556, 557-8 (8th Cir. 2002)(citations omitted). Here, Marshall has not given any indication of what material facts were omitted or how any missing portion of the transcript would bolster her case. *Id.* at 558.

There is no basis for the Court to remand to the Commissioner based on inaudible portions of the record. *See Andres v. Bowen*, 870 F. 2d 453, 456 (8th Cir. 1989) (Fair judicial review of the record not precluded where certain portions of the hearing transcript were missing).

Fifth, Marshall argues that the ALJ erred by failing to give weight to the VA's finding that Marshall is 100 percent disabled due to service-connected PTSD. (Tr. 24).   On September 25, 2001, the VA determined that Marshall had PTSD directly related to military service, which was evaluated as 100 percent disabling from June 16, 2000, the date the VA received her initial claim for PTSD.  (Tr. 617-621).

"The ALJ should consider the VA's finding of disability, but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits." *Pelkey v. Barnhart,*  433 F.3d 575, 579 (8th Cir. 2006)(citations omitted).

The ALJ expressly addressed the VA disability rating.  She found that the receipt of disability payments provided a disincentive for Marshall to seek and perform work.  The ALJ also noted that the VA used different criteria to determine disability than that used by the Social Security Administration.  (Tr. 24).

The ALJ considered additional evidence than that which was considered by the VA in making her determination.  In particular, the ALJ considered the post-September, 2001, documentation, which further supports the ALJ's conclusion.

The Court is persuaded that there is substantial evidence to support the ALJ's determination that  Marshall can work despite her PTSD.   As noted above, very little of Marshall's therapy focused on her inability to work.  Despite assertions of her  inability to leave the house and deal with people, Marshall regularly went to and actively participated

in therapy sessions.  (Tr. 581).  She takes care of herself and her daily needs, walks her dog on a daily basis, uses public transportation and drives.  (Tr. 84).  In August, 2002, she reported that she participated in church activities and water aerobics.  She also stated that she would be willing to consider volunteer activities. (Tr. 397).   She traveled to Little Rock, Arkansas from Seattle, Washington several times during the past few years.  *See McGeorge v. Barnhart*, 321 F. 3d 766, 768 (8th Cir. 2003) (finding that plaintiff retained the RFC to perform past relevant work supported by evidence in record that plaintiff able to perform may of the activities associated with daily life).

At some point she did volunteer at hospice.  She quit in December, 2004, because she was "fearful of the people she [was] having investigated."  (Tr. 575).  However, at the hearing, she testified that she still volunteered at hospice.  (Tr. 642).

Marshall also spoke about the positive effect work has on her emotional well-being. She testified that work has been her social outlet.  (Tr. 628).  Work was important for her feeling of self-worth (Tr. 281), and she reported that she derived pleasure from doing a good job in her work. (Tr. 303).

Furthermore, the ALJ could rely on Marshall's failure to follow  prescribed treatment for her alcoholism in determining that Marshall is not disabled.  *See  Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." )

## CONCLUSION

In sum, the ALJ properly concluded that Marshall could perform her past relevant work.  The  Court finds that there is substantial evidence to support the Commissioner's decision that Marshall is not disabled.

Accordingly, the Commissioner's administrative decision is affirmed.

IT IS SO ORDERED this  23   day of August, 2007.

_____
UNITED STATES DISTRICT JUDGE